**FILED**

**April 14, 2022**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **H.B., J.B., P.B., D.B., and B.B.-1**

**No. 21-0058** (Preston County 18-JA-86, 18-JA-87, 18-JA-88, 18-JA-89, and 19-JA-16)

## MEMORANDUM DECISION

Petitioner Father R.B. by counsel, Michael D. Safcsak, and by his guardian ad litem ("guardian"), Andrew Frye III, and petitioner mother B.B.-2 by counsel, Hilary M. Bright, and by her guardian, Jennifer Yost, appeal the Circuit Court of Preston County's January 19, 2021, order terminating their parental rights to H.B., J.B., P.B., D.B., and B.B.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The children's guardian, DeAndra Burton, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioners argue that the circuit court erred in accepting the voluntary relinquishments of their parental rights to the children and terminating their parental rights. Petitioner mother also argues that the circuit court erred in denying her an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition against petitioners in December of 2018, alleging chronic educational neglect, medical and dental neglect, hygienic neglect, and exposure of the children to long-standing and unsafe living conditions. According to the DHHR, it received a referral that the home was in deplorable and unsafe conditions with exposed wiring, a roach infestation, a rat infestation, and no running water. The referral indicated that all four children had

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and the petitioner mother share the same initials, we will refer to them as B.B.-1 and B.B.-2, respectively, throughout this memorandum decision.

1

been bitten by rats in the home, rarely bathed, and rarely attended school. Further, the children were reportedly ostracized by their peers due to being malodorous. A Child Protective Services ("CPS") worker investigated the matter and obtained school records, which indicated that the children had missed many days, with one child missing ninety-one days during the 2017-2018 school year.

The DHHR further alleged that petitioners had been the subject of two prior child abuse and neglect proceedings in 2008 and 2013 for similar circumstances, including poor living conditions and educational and medical neglect. The DHHR noted that at least thirty referrals were made regarding the family prior to 2008. The parents were granted post-adjudicatory improvement periods in the 2008 proceedings, which they successfully completed, and the children were returned to their care.[2]

Lastly, the DHHR alleged that CPS initiated safety services in the home, but the parents were noncompliant with services. The parents refused services on at least eight occasions, refused to allow the service provider to enter their home, and failed to ensure that the children attended school or had their hygiene needs met. The DHHR concluded that the parents failed to provide appropriate education for the children, failed to maintain any semblance of proper hygiene or sanitary living conditions, and demonstrated impaired judgment and an inability to provide for the children.

An amended petition was filed later in December of 2018, following B.B.-1's birth. In the amended petition, the DHHR alleged that the mother failed to obtain adequate prenatal care, that petitioners had cockroaches in their belongings while at the hospital for B.B.-1's delivery, and that petitioner father behaved erratically at the hospital. The DHHR alleged that petitioners were unable to provide a safe environment for the children.

Early in the proceedings, the circuit court appointed each petitioner a guardian (due to their alleged intellectual disabilities) and granted petitioners services. The adjudicatory hearing was set and continued multiple times to accommodate requests for continuances as well as the substitution of counsel for petitioner father. The adjudicatory hearing was eventually held in September of 2019. A service provider testified that she attempted to provide petitioners with parenting and adult life skills classes prior to the petition's filing and attempted to schedule at least ten such sessions without success. The service provider testified that the services were closed due to noncompliance. An attendance coordinator from the children's school testified that she tried to address truancy issues with petitioners to no avail. Further, a school principal testified that he contacted petitioners at least once per week regarding the children's truancy issues to no avail; that when the children did come to school, they were dirty and malodorous; and that cockroaches were found in the children's belongings at school. A police officer testified that, at the time of the children's removal,

---

[2]The petition did not indicate whether the parents were granted improvement periods during the 2013 proceedings. However, the children's guardian filed a report with the circuit court indicating that the parents were granted improvement periods in the 2013 proceedings, which they completed, and regained custody of the children. The guardian further indicated that the DHHR had received fifty-five referrals regarding the family from 1999-2018.

the home was unsanitary with animal feces and garbage throughout, in addition to a cockroach infestation. Following this testimony, the adjudicatory hearing was continued.

The circuit court reconvened the adjudicatory hearing in December of 2019. At that time, petitioners entered into voluntary stipulations whereby they admitted to providing inadequate and inappropriate housing, medically neglecting the children, and contributing to truancy issues with the children. Relevant to this appeal, petitioner mother filed motions for a post-adjudicatory and a post-dispositional improvement period, which were either held in abeyance or denied.

Thereafter, the circuit court held several dispositional hearings wherein the DHHR sought the termination of petitioners' parental rights and presented testimony in support. At the initial dispositional hearing held in August of 2021, a psychologist testified that she performed psychoeducational evaluations of the children and determined that their lack of development was due to malnutrition, lack of mental and emotional stimulation, and an overall neglectful environment. The children's pediatrician testified that the children came to her office dirty and smelling foul; that the children had lice three times in one year; and that the children had scabies for eight months, which she opined was indicative of neglect. The children's dentist testified that the children suffered from severe dental neglect with decay to the gum line and gum abscesses. The dentist noted that the decay was so severe that the children had difficulty eating normally.

At the next hearing, held in November of 2021, a licensed psychologist testified that he performed psychological evaluations on the parents and concluded that the parents had the capacity to address all areas of neglect yet willfully failed to remedy the same. A visitation supervisor testified that petitioner mother attended only nine of sixty scheduled visits with the children.

On January 13, 2021, another dispositional hearing was held. Petitioners and their counsel and guardians took a recess during the hearing and indicated their desire to voluntarily relinquish their parental rights to the children. As such, the circuit court continued the hearing to January 19, 2021, to allow for counsel to prepare the necessary paperwork and to review it with petitioners. At the reconvened hearing, the circuit court placed petitioners under oath and questioned them regarding the written voluntary relinquishments of parental rights they had tendered to the court. Indeed, the circuit court read both of the parents' tendered relinquishments on the record, and petitioners confirmed that they believed it was in the children's best interest to relinquish their parental rights; that they had discussed the matter with their respective counsel and guardians; and that they had not been coerced, forced, or induced to relinquish their parental rights. Accordingly, the circuit court accepted their voluntary relinquishments and terminated their parental rights by order entered on January 19, 2021. Petitioners now appeal.[3]

The Court has previously established the following standard of review in cases such as this:

---

[3]H.B., B.B.-1, and D.B. were placed together in a foster home and the permanency plans for H.B. and B.B.-1 are adoptions in that home. The permanency plan for D.B. is permanent guardianship in the same home. J.B. and P.B. are currently receiving residential treatment, and their permanency plans are adoptions following their discharges from treatment.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner mother argues that the circuit court erred in denying her an improvement period. Petitioner claims that she demonstrated her willingness to participate in the proceedings by obtaining suitable housing but that she "could not show how the other issues of educational neglect, medical neglect, and improper hygiene could be or were remedied without being able to participate in parent education classes or other observed instruction provided by" the DHHR. Petitioner argues that she was not offered services, and that she nonetheless established her entitlement to an improvement period. We disagree.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." Further, "[t]his Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

The record is clear that petitioner mother failed to demonstrate that she was likely to fully participate in an improvement period. Contrary to petitioner's claims, she was offered services from the initiation of the proceedings but failed to participate or comply. Testimony demonstrated that a service provider attempted to schedule parenting and adult life skills classes with petitioner no less than ten times to no avail. Eventually, those services were closed due to noncompliance. Petitioner also failed to visit with her children during the proceedings, attending only nine out of sixty scheduled visits. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Moreover, petitioner underwent a psychological evaluation, and the evaluator testified that petitioner had the capacity to address the conditions of abuse and neglect "but lacks

the desire or motivation to do so." Based on the foregoing, the circuit court did not abuse its discretion in denying petitioner an improvement period.

Petitioners next argue that the circuit court erred in accepting their voluntary relinquishments and terminating their parental rights to the children. Petitioners argue that the circuit court did not comply with Rule 35 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings[4] in that the circuit court did not determine whether petitioners fully understood the consequences of signing the voluntary relinquishment forms, especially given their intellectual disabilities. Petitioners further argue that accepting their voluntary relinquishments was not in the best interests of the children. Having reviewed the record, we find that petitioners are entitled to no relief in this regard.

At the outset, we note that there is no prescribed manner in which a circuit court must question a respondent parent who intends to voluntarily relinquish his or her parental rights. Rule 35(a)(3) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings requires that in the case of a signed voluntary relinquishment of parental rights, the court shall determine whether the parent (1) fully understands the consequences of a termination of parental rights, (2) is aware of possible less drastic alternatives than termination, and (3) was informed of his or her right to a hearing and representation by counsel. Pursuant to West Virginia Code § 49-4-607, "[a]n agreement of a natural parent in termination of parental rights shall be valid if made by a duly acknowledged writing and entered into under circumstances free from duress and fraud." Further, this Court has acknowledged that "[West Virginia Code § 49-4-607] permits a parent to voluntarily relinquish his/her parental rights. Such voluntary relinquishment is valid pursuant to [West Virginia Code § 49-4-607] if the relinquishment is made by 'a duly acknowledged writing' and is 'entered into under circumstances free from duress and fraud.'" Syl. Pt. 3, *In re Cesar L.*, 221 W. Va. 249, 654 S.E.2d 373 (2007).

Petitioners fail to demonstrate that the circuit court erred in accepting the voluntary relinquishments of their parental rights. On appeal, petitioners do not assert that they were under fraud or duress in making the agreements. Rather, they attempt to argue that the circuit court did not comply with proper procedure and that the children's best interests was not supported by the termination. However, the record demonstrates that the circuit court read aloud petitioners' respective written voluntary relinquishments, pausing frequently to permit each petitioner to affirm that they agreed to the documentation as written. Petitioner mother affirmed that she discussed the relinquishment with her counsel, that she was relinquishing her parental rights willingly and voluntarily, that she had not been induced into signing the forms, and that she was not relinquishing her parental rights as a result of fraud or duress. Likewise, petitioner father affirmed that he understood the consequences of his action, the permanent nature of the termination of his parental

---

[4]Rule 35(a)(3) provides:

If the parent is present in court and voluntarily has signed a relinquishment of parental rights, the court shall determine whether the parent fully understands the consequences of a termination of parental rights, is aware of possible less drastic alternatives than termination, and was informed of the right to a hearing and to representation by counsel.

rights, and that he had the opportunity to discuss his rights with his counsel. He further affirmed that he had not been induced, coerced, or threatened into signing the relinquishment form. Moreover, petitioners were aware of their right to a hearing as testimony had been presented at two prior dispositional hearings before they decided to voluntarily relinquish their parental rights. The circuit court permitted nearly an hour-long recess for petitioners to discuss the relinquishments with their counsel and guardians, and then continued the hearing for a few days to allow petitioners additional time to meet with counsel to review the relinquishment forms. While petitioners argue that the children's best interests were not served by the voluntary relinquishments, they provide no support for these self-serving assertions. Based on the foregoing, we conclude that the voluntary relinquishment process was sufficiently explained to petitioners; that they knowingly, intelligently, and voluntarily relinquished their parental rights; and that they have failed to demonstrate that they signed the documentation due to coercion or duress. Therefore, we find that this assignment of error is without merit.

Lastly, because two of the children have not yet achieved permanency, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child

is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 19, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: April 14, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment